UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

ALAN J. GOLDMAN                                   :
                                                  :
                 v.                               :      C.A. No. 10-064S
                                                  :
NICHOLAS J. MASUCCI                               :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is presently before the Court on a Motion to Dismiss (Document No. 4) filed by

Defendant Nicholas J. Masucci ("Masucci").   Masucci seeks dismissal of Plaintiff Alan J.

Goldman's ("Goldman") Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) on the grounds

that this Court lacks personal jurisdiction over him and that this venue is improper.   In the

alternative, Masucci seeks to transfer venue to the United States District Court for the District of

New Jersey or the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a).   Goldman filed a

timely Objection to Masucci's Motion.   (Document No. 10).

The Motion has been referred to me for preliminary review, findings and recommended

disposition.   See 28 U.S.C. § 636(b)(1)(B); LR Cv 72.   A hearing was held on July 14, 2010.   After

reviewing the pleadings and arguments of the parties, in addition to performing independent

research, I recommend that Defendant's Motion to Dismiss (Document No. 4) be DENIED and that

Defendant's alternative Motion to Transfer Venue be DENIED.

**Facts**

Goldman, a lawyer/lobbyist, was a citizen of Rhode Island until 2005.   Document No. 10-1,

pp. 37-42, Goldman Aff., ¶ 1; Document No. 1-1, Compl., ¶¶ 1-3.   He is presently a citizen of

Florida with a summer residence in Rhode Island.  Id.  Masucci is a citizen of New Jersey and is presently the President of Berger Group Holdings, Inc. ("Berger"), an engineering firm with its principal place of business in New Jersey.  Document No. 5, Masucci Aff., ¶¶ 4, 7; Compl. ¶ 2.

In his Complaint, Goldman outlines the background of his alleged business relationship with Masucci and Thomas Hanley, also a Rhode Island lawyer/lobbyist who is not a party to this lawsuit. Although the facts alleged are somewhat complicated, the claim in a nutshell is that Masucci owned a 5% interest in a company called Virginia Maintenance Services, Inc. ("VMS") and that there was a "verbal stock agreement" among Masucci, Goldman and Hanley that Masucci was holding a 1% interest in VMS (20% of Masucci's interest) in trust for both Goldman and Hanley each.  Goldman Aff. ¶¶ 18, 20; Compl. ¶¶ 14, 17.  Goldman alleges that VMS was sold in 2007 and Hanley received a check for approximately $190,000.00 from Masucci for his 1% beneficial interest in VMS. Goldman Aff., ¶ 22; Compl. ¶ 18.  Goldman alleges that Masucci has refused to pay him for his 1% beneficial interest in VMS and sues for an accounting, breach of contract and constructive trust.

Although Masucci has not yet answered Goldman's Complaint, he asserts in his Affidavit (Document No. 5) that Goldman's allegations are false and that he never made any such offer or promise to Goldman.  Masucci acknowledges that he had an agreement with Hanley and paid him the sum of $182,800.00 (20% of Masucci's interest in VMS) in November 2007.  Masucci Aff., ¶ ¶ 20, 23.  Masucci further asserts that he

> made that offer to Mr. Hanley only.  If he wanted to share that 20% interest of my 5% interest with Mr. Goldman (or his son Brian), that was totally up to Mr. Hanley.  I made the agreement with Mr. Hanley because he was my contact.  That was the deal.  I never made any such agreement with or made any such promise to Mr. Goldman – in Rhode Island or anywhere else.

Masucci Aff., ¶ 20.

**Standard of Review**

It is well established that the burden rests with the plaintiff to make a prima facie showing to withstand a challenge to personal jurisdiction. Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001) (citing Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83-84 (1st Cir. 1997)). See also Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002). In assessing the plaintiff's prima facie case, the Court must accept as true the "plaintiff's (properly documented) evidentiary proffers" and construe them "in the light most congenial to the plaintiff's jurisdictional claim." See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34, 51 (1st Cir. 1998). See also Trio Realty, Inc. v. Eldorado Homes, Inc., 350 F. Supp. 2d 322, 325 (D.P.R. 2004) (citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)) (holding that the court "draws the facts from the pleadings and the parties' supplementary filings, including affidavits, taking facts affirmatively alleged by plaintiff as true and construing disputed facts in the light most hospitable to plaintiff.") In setting forth the prima facie case, the plaintiff is required to bring to light credible evidence and "cannot rest upon mere averments, but must adduce competent evidence of specific facts." Barrett, 239 F.3d at 26 (citing Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995)). Here, Goldman relies primarily on his sworn Affidavit. (Document No. 10-1 at pp. 37-42).

Because Masucci is not present in Rhode Island, he is subject to personal jurisdiction in this Court only if he has certain minimum contacts with the forum "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted). Whether sufficient minimum contacts exist depends on the quality and nature of Masucci's activity, but it is essential that there be some

act by which Masucci purposefully availed himself of the privilege of conducting business with the forum state, thus invoking its benefits and protections. Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995). This "purposeful availment" requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts..." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).   In applying the minimum contacts analysis, the courts recognize two types of jurisdiction – specific and general.

A.      **Specific Jurisdiction**

The initial inquiry is whether the Court has general or specific jurisdiction.  Goldman exclusively contends that there is specific jurisdiction over Masucci.  Thus, the Court need not consider if general jurisdiction exists as to Masucci.  The Supreme Court has held that where plaintiff's claim "arises out of" or is "directly related" to defendant's contacts with the forum state, a court exercises "specific jurisdiction" over the defendant. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, n.8 (1984).  In the analysis of specific jurisdiction, the court applies two general rules.  First, the forum in which the federal district court sits must have a long-arm statute that grants jurisdiction over the defendant. See Barrett, 239 F.3d at 26.  Second, "the plaintiff must...show sufficient minimum contacts such that 'the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution.'" LaVallee v. Parrot-Ice Drink Prod. of Am., Inc., 193 F. Supp. 2d 296, 302 (D. Mass. 2002) (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994)).  Rhode Island's long-arm statute, R.I. Gen. Laws § 9-5-33, authorizes a court to exercise jurisdiction over non-resident defendants to the fullest extent permitted by the United States Constitution. See Donatelli v. Nat'l Hockey League, 893 F.2d 459, 461 (1st Cir. 1990); see also Morel ex rel. Moorehead v. Estate of Davidson, 148 F. Supp. 2d 161 (D.R.I. 2001).  Accordingly,

-4-

the Court need only decide whether the assertion of personal jurisdiction over Masucci comports

with due process principles.

> **B.    Due Process Considerations**

Where specific jurisdiction is asserted, the First Circuit has developed a three-prong test for

analyzing the due process considerations for the existence of specific personal jurisdiction:

> First, the claim underlying the litigation must directly arise out of, or
> relate to, the defendant's forum-state activities.   Second, the
> defendant's in-state contacts must represent a purposeful availment
> of the privilege of conducting activities in the forum state, thereby
> invoking the benefits and protections of that state's laws and making
> the defendant's involuntary presence before the state's courts
> foreseeable.  Third, the exercise of jurisdiction must, in light of the
> Gestalt factors, be reasonable.

United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st

Cir. 1992).  In order for a court to exercise specific personal jurisdiction, all three factors –

relatedness, purposefulness and reasonableness – must be satisfied.

As part of the minimum contacts analysis, the First Circuit has rejected the "stream of

commerce" theory of personal jurisdiction.  See Boit v. Gar-Tec Prod., Inc., 967 F.2d 671, 681-682

(1st Cir. 1992).  In Hughes, the First Circuit explained that although the defendant knew that two

helicopters it sold to another company were destined for Puerto Rico, the resale "was not a stream

[of commerce] or the beginning of one; it was an isolated splash. It was not the type of transaction

that could reasonably lead a manufacturer to believe would be the basis for haling him into court in

Puerto Rico."  Dalmau Rodriguez v. Hughes Aircraft Company, 781 F.2d 9, 15 (1st Cir. 1986).  As

part of its analysis, this Court will consider whether Masucci satisfies the requisite "reasonable

anticipation" requirement of due process.

> **1.    Relatedness**

The first prong of the due process test is a consideration of relatedness.  To meet the relatedness requirement of specific personal jurisdiction, "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities."  United Elec., 960 F.2d at 1089.  Relatedness is intended to be a "flexible, relaxed standard."  Sawtelle, 70 F.3d at 1389 (citing Pritzker, 42 F.3d at 61).  In a contract case, relatedness is established if the defendant's contacts with the forum "were instrumental either in the formation of the contract or in its breach."  Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1ˢᵗ Cir. 1999) (emphasis added).

In this case, the Court is presented with conflicting Affidavits as to whether a verbal agreement was formed in Rhode Island between the parties.  In his Affidavit, Goldman testifies that in early July 1995, while present in Rhode Island, Masucci represented to Hanley and Goldman that when VMS began its operations, Masucci would be issued stock and that Hanley and Goldman "would obtain an interest in the company as well."  Goldman Aff., ¶ 13.  Further, Goldman testifies that, on October 26, 1995, Goldman and Hanley met with Masucci in Rhode Island, where Masucci directed Goldman to meet a possible VMS subcontractor which Goldman did in Rhode Island and later in Virginia, and thereafter reported the results of such meetings to Masucci.  Id., ¶ 15.  Finally, Goldman testifies that on May 15, 1996, at a meeting in Rhode Island, Masucci verbally assured Hanley and Goldman that, out of his 5% share in VMS, he would hold 1% each in trust for Hanley and Goldman resulting in a 60%-20%-20% split of the 5% among the three of them.  Id., ¶ 18.  Goldman testifies that the "agreement" was later "discussed" at a dinner meeting in Washington, D.C. and "reaffirmed" at a 2002 meeting held in Virginia.  Id., ¶¶ 18, 20.

Although Masucci disputes many of Goldman's allegations, the Court is not in a position at this posture of the case to make credibility determinations and to resolve this battle of affidavits.

Masucci has not shown that Goldman's Affidavit is implausible or contradicted by available objective evidence.  At this point, it appears that the dispute boils down to Goldman's word versus Masucci's word.[1]  Goldman has alleged specific facts in his Affidavit which are sufficient to meet his prima facie burden.  See Ticket Master-New York, Inc., 26 F.3d at 203.  (In assessing the prima facie jurisdictional showing, the Court "draw[s] the facts from the pleadings and the parties' supplementary filings, including affidavits, taking facts affirmatively alleged by plaintiff as true and construing disputed facts in the light most hospitable to plaintiff" and does not "credit conclusory allegations or draw farfetched inferences.").  Goldman's assertions are specific as to date, location and substance and cannot be rejected as conclusory.  Also, although the issue of whether an agreement was formed remains a disputed fact, Goldman's allegation cannot be labeled as "farfetched" since Masucci admits that such an agreement existed (albeit exclusively) as to Hanley and Hanley was paid.

Goldman has met his prima facie burden as to the relatedness prong by submitting evidence of specific facts supporting his allegation that the verbal stock agreement in question was formed in Rhode Island at a meeting which included both Goldman and Masucci and that a subsequent meeting was held in 1995 in Rhode Island which included both Goldman and Masucci related to performance of a task by Goldman for VMS.  See Phillips Exeter, 196 F.3d at 289 ("In contract cases, a Court charged with determining the existence vel non of personal jurisdiction must look to the elements of the cause of action and ask whether the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach.").  As such, this Court is satisfied

---

[1] At the hearing, Goldman's attorney explained that Hanley had not weighed in by affidavit because he did not presently want to get into the middle of this dispute.

-7-

that Masucci has made sufficient contacts with this District and that these contacts directly relate to Goldman's claims in this case.

### 2.     Purposeful Availment

The second prong of the due process test considers whether a defendant has "engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable."  Sawtelle, 70 F.3d at 1391 (quoting Rush v. Savchuk, 444 U.S. 320, 329 (1980)).  Two factors are considered in the purposeful availment analysis: voluntariness and foreseeability.  See Ticketmaster, 26 F.3d at 207.  "To demonstrate purposeful availment, the plaintiff must proffer 'evidence that the defendant[s] actually reached out to the plaintiff's state of residence to *create* a relationship – say, by solicitation, – the mere fact that the defendant[s] willingly entered into a tendered relationship does not carry the day.'"  PFIP, LLC v. Planet Fitness Enter., Inc., No. 04-250-JD, 2004 WL 2538489, at *7 (D.N.H. Nov. 10, 2004) (quoting Phillips Exeter, 196 F.3d at 292). The requirement "depends upon the extent to which the defendants voluntarily took action that made it foreseeable they might be required to defend themselves in court in [the forum state]."  Id. (citing Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 11 (1st Cir. 2002)).

The issue of foreseeability "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated contacts', or of the 'unilateral activity of another party or a third person.'"  Burger King, 471 U.S. at 475.  There must be evidence of "a voluntary decision by the defendant to inject [itself] into the local economy as a market participant." Microfibres, Inc. v. McDevitt-Askew, 20 F. Supp. 2d 316, 321 (D.R.I. 1998).  This analysis involves looking at essentially the same facts as those considered regarding the purposeful availment prong.

Here, the contacts were clearly not "random" or "attenuated."  Masucci is alleged to have met with Hanley and/or Goldman on multiple occasions in Rhode Island and, at two of those meetings, to have agreed to give Goldman a portion of his interest in VMS.  At the time, Goldman was a Rhode Island resident and lawyer with a legal/lobbying practice based in Rhode Island.  Further, Masucci admits he had such a "deal" with Hanley, also a Rhode Island based lawyer/lobbyist, and forwarded payment to Hanley in Rhode Island, but that the deal did not extend to Goldman.  The possibility of having to litigate in a Rhode Island court regarding the issues presented in this case should not come as a surprise to Masucci.

**3.     Gestalt Factors**

The third prong of the test involves a determination of whether or not the Court's exercise of jurisdiction over Defendant is reasonable.  United Elec., 960 F.2d at 1089.  In making this determination, the Court considers the so-called "Gestalt" factors.  See, e.g., World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980).

**(a)     Defendant's Appearance**

In order for Defendant to show that he is unduly burdened by appearing in the forum state, he must "...demonstrate some kind of special or unusual burden."  Pritzker, 42 F.3d at 64.  Courts have recognized, however, that it is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction.  See id. at 64.  Thus, absent a showing of an undue burden, mere economic considerations are insufficient.  Masucci alleges no special burden.  As such, this factor weighs in favor of this Court exercising jurisdiction over Masucci.

**(b)** **Forum State's Interest**

In order to determine the forum state's interest in hearing the dispute, this Court should "not...compare [its] interest to that of some other jurisdiction...." Foster, 46 F.3d at 151 (citing Burger King, 471 U.S. at 483 n.26) (emphasis omitted). Accordingly, even though New Jersey or Virginia may have some interest in litigating this case, this Court is not called on to weigh the forums' respective interests. Here, Rhode Island has an interest in seeing that a stock agreement allegedly entered into in Rhode Island with a Rhode Island resident is resolved in this forum. This factor weighs in favor of exercising jurisdiction over Masucci.

### (c)      Plaintiff's Interest in Relief

This factor clearly weighs in Goldman's favor. The goal is to ensure that a plaintiff is able to obtain "convenient and effective relief." Pritzker, 42 F.3d at 64. Central to this goal is that the court "accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience." Id. (citing Ticketmaster, 26 F.3d at 211). Here, it is readily apparent that Goldman wishes to litigate in this forum.

### (d)      Judicial System's Interests

The focus of this factor is on the "judicial system's interest in obtaining the most effective resolution of the controversy." Nowak v. Tak How Invest., Ltd., 94 F.3d 708, 718 (1st Cir. 1996). Although the agreement was allegedly entered into in Rhode Island, it was primarily performed in Virginia and Goldman is presently only a part-time, seasonal resident of Rhode Island. Further, Masucci currently works and resides in New Jersey. Therefore, wherever this case is litigated, someone will have to travel. Accordingly, although this factor may tip slightly in Masucci's favor, it does not outweigh the other factors weighing heavily in Goldman's favor.

### (e)      States' Common Interest

The last Gestalt factor "addresses the interests of the affected governments in substantive social policies." Id. at 719.  In considering this factor, "the most prominent policy implicated is the ability of a state to provide a convenient forum for its residents to redress injuries inflicted by out-of-forum actors." Sawtelle, 70 F.3d at 1395 (quoting Burger King, 471 U.S. at 473).  Goldman was a resident of Rhode Island at the relevant time and Rhode Island has an interest in ensuring that its residents are protected from harm by out-of-state defendants.  Accordingly, this factor weighs in favor of this Court exercising jurisdiction over Masucci.

None of the Gestalt factors weigh heavily enough in Masucci's favor to suggest to this Court that they outweigh the analysis with regard to the first two prongs of the jurisdictional test.  On the whole, the Gestalt factors support the exercise of personal jurisdiction over Masucci.

### C.      Venue

Alternatively, Masucci argues that even if this Court rejects its arguments for dismissal, it should exercise its discretion to transfer this case to either the District of New Jersey or the Eastern District of Virginia in the interest of justice and for the convenience of parties and witnesses pursuant to 28 U.S.C. § 1404(a).

Section 1404(a), 28 U.S.C., states, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  In weighing whether a motion to change venue should be granted, the Court makes its determination based on a "case-by-case consideration of convenience and fairness." See Brian Jackson & Co. v. Eximias Pharm. Corp., 248 F. Supp. 2d 31, 38 (D.R.I. 2003) (citation omitted).  In addition to these considerations, the Court should also consider the "availability of documents; the possibility of consolidation; and the order in which the district court obtained

jurisdiction." <u>Coady v. Ashcraft & Gerel</u>, 223 F.3d 1, 11 (1st Cir. 2000).  In weighing these interests, "[n]ot only does the burden of proof rest with the party seeking to transfer; there is a 'strong presumption in favor of the plaintiff's choice of forum.'" <u>Astro-Med, Inc. v. Nihon Kohden Am., Inc.</u>, 591 F.3d 1, 8 (1st Cir. 2009) (<u>quoting</u> <u>Coady</u>, 223 F.3d at 11).

Here, Masucci has not made a sufficient showing to overcome the presumption in favor of Goldman's choice of forum.  Masucci focuses its venue argument on the fact that the alleged agreement was primarily performed in Virginia and allegedly breached in New Jersey.  However, Masucci does not assert that this is a document-intensive case or one with a substantial number of out-of-state witnesses.  In fact, Masucci does not identify any witnesses other than himself (a New Jersey resident), Goldman (a permanent Florida and seasonal Rhode Island resident) and Hanley (a Rhode Island resident).  If this case ultimately goes to trial, it appears to present the narrow issue of whether Masucci verbally made the same promise to Goldman as he made to Hanley.  It would certainly be more convenient for Masucci to litigate this case in New Jersey where he resides and works.  However, "[i]nconvenience to the defendant is not sufficient to grant § 1404(a) relief, where the transfer would merely shift the inconvenience to the other party."  <u>Brian Jackson</u>, 248 F. Supp. 2d at 38.  "Section 1404(a) provides for transfer to a <u>more</u> convenient forum, not to a forum likely to prove equally convenient or inconvenient." <u>Id.</u> (emphasis added).  Here, Masucci's showing falls far short of overcoming the presumption in favor of Goldman's choice of forum.  Accordingly, I recommend that Masucci's alternative Motion to Transfer Venue be DENIED.

**Conclusion**

For the reasons discussed above, I recommend that Defendant's Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(3), Fed. R. Civ. P., (Document No. 4) be DENIED; and that Defendant's alternative Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) be DENIED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/   Lincoln D. Almond_____
LINCOLN D. ALMOND
United States Magistrate Judge
July 15, 2010