UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

```
_____
                                )
ALAN J. GOLDMAN,                )
                                )
        Plaintiff,              )
                                )   C.A. 10-064 S
    v.                          )
                                )
NICHOLAS J. MASUCCI,            )
                                )
        Defendant.              )
_____)
```

**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

In this contract case, Plaintiff Alan Goldman alleges that Defendant Nicholas Masucci promised to give him twenty percent of his five percent share in a company called VMS. Masucci denies ever making such a promise to Goldman, though he admits that he made a similar promise to a third-party named Thomas Hanley and that he paid Hanley in satisfaction of that promise. Masucci moved to dismiss the complaint for lack of personal jurisdiction. In a report and recommendation dated July 15, 2010 (the "R&R"), Magistrate Judge Lincoln D. Almond concluded that this Court has personal jurisdiction over Masucci and recommended that the motion to dismiss be denied. Masucci has objected to the R&R. For the reasons discussed below, the Court adopts the R&R.

Goldman has specifically alleged, at the minimum, the following jurisdictionally relevant facts:

- During meetings in Providence on May 18, 1994 and September 15, 1994, Masucci shared his vision for developing VMS with Hanley and Goldman. He said if Hanley and Goldman would help him secure a venue for this project, "it would be very lucrative for all of them." (Goldman Affidavit ¶ 9, ECF No. 10-1.)

- Following this discussion, Goldman got working on the project. "Until the headquarters of VMS were established in Richmond, Virginia [around July 1995], almost all of the discussions by and among Goldman, Hanley and Masucci relating to [VMS] occurred in Rhode Island." (Id. ¶ 12.)

- "In early July 1995, while in Rhode Island, Masucci represented to both Hanley and Goldman that when [VMS] began its operations, Masucci would be issued shares of its stock and that Hanley and Goldman would obtain an interest in the company as well." (Id. ¶ 13.)

- On October 26, 1995, in a meeting in Providence, Masucci directed Goldman to meet with a possible subcontractor for a VMS project. Goldman met with this individual in Providence (and later in Roanoke, Virginia). (Id. ¶ 15.)

- "[O]n May 15, 1996, at a meeting in Providence, Masucci verbally assured Hanley and Goldman that, out of the five percent (5%) interest in VMS that was to be issued to Masucci, he would hold one percent (1%) in trust for Hanley and one percent (1%) for Goldman, resulting in a 3/1/1 split among Masucci, Hanley and Goldman." (Id. ¶ 18.)

- Through June 2007, Goldman continued to act on behalf of VMS in accordance with the oral contract he had made with Masucci in Rhode Island. Goldman and Masucci continued to have periodic contacts in Rhode Island. (Id. ¶ 21.)

- "Over the years, Goldman performed considerable services for . . . VMS for which he was not compensated, and which he would have never performed but for the aforesaid verbal stock agreement with Masucci." (Id. ¶ 25.)

2

- Goldman repeatedly requested payment on the contract from Masucci, including once by email when they were both in Rhode Island. When Goldman was in Rhode Island, he received an email from Masucci stating he would not pay. (Id. ¶ 23.)

According to these allegations, which must be accepted as true on a motion to dismiss, Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002), the idea of forming the company at the heart of the contract was first discussed by the parties in Rhode Island; Goldman worked in Rhode Island on projects for the company; the parties had several discussions about the company in Rhode Island; the promise and the contract were made and later reaffirmed in Rhode Island; and Goldman performed services in Rhode Island in reliance on Masucci's promise and in connection with of the contract. These allegations are sufficient to establish the Court's specific personal jurisdiction over Masucci. See Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 7 (1st Cir. 2002) ("For its contract claim, . . . [plaintiff] may ask the court to draw inferences from the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing. . . . It could show, for example, that the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach.") (internal citations and quotation marks omitted); accord Phillips Exeter Acad. v. Howard Phillips

Fund, Inc., 196 F.3d 284, 289 (1st Cir. 1999); Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007); see also Brian Jackson & Co. v. Eximias Pharm. Corp., 248 F. Supp. 2d 31 (D.R.I. 2003) (holding that this Court had specific personal jurisdiction over defendant where the parties contemplated that plaintiff would be working and performing his contractual duties in Rhode Island; plaintiff corresponded from Rhode Island via telephone, fax, and email with defendant; and plaintiff negotiated the contract from Rhode Island).

Masucci's arguments to the contrary boil down to disputing the veracity of Goldman's alleged facts. Masucci's arguments assailing Goldman's credibility are not slam dunk.[1] More importantly, it is basic civil procedure that a motion to dismiss is not the place to resolve factual disagreements and make credibility determinations; rather, the Court must accept the facts as alleged by plaintiff as true, and draw all reasonable inferences in plaintiff's favor. See, e.g., Daynard,

---

[1] For example, to Masucci asserts that if a contract ever existed a person of Goldman's experience would have put it in writing, to which Goldman plausibly responds that Masucci advised against putting the contract in writing because VMS's shareholders would become upset if they learned of the arrangement. Of course, it is ultimately for the jury to choose which side to believe. The Court offers this example only to show that, as the Magistrate Judge correctly found, Goldman's allegations are neither "conclusory" nor "farfetched" so as to defeat the presumption of truth normally attached to a plaintiff's allegations on a motion to dismiss. (See R&R at 7 (citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)).)

290 F.3d at 51 ("We must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing. . . . We take these facts as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim.") (internal citations and quotation marks omitted).

For reasons sufficiently explained in the R&R, Masucci's alternative argument for a transfer of venue is also without merit.

For the reasons set forth above and in the R&R, the Court accepts and adopts the R&R in full and DENIES Masucci's motion to dismiss.

IT IS SO ORDERED.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date: March 10, 2011